**UNITED STATES BANKRUPTCY COURT
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re: | Chapter 11 |
| SWISS CHALET, INC., | Case No. 11-04414 (ESL) |
| Debtor | |

**URGENT REQUEST FOR ENTRY OF ORDER PROHIBITING THE USE OF CPG/GS PR NPL LLC' CASH COLLATERAL AND FOR ADEQUATE PROTECTION, AND FOR EMERGENCY HEARING THEREON**

**TO THE HONORABLE COURT:**

COMES NOW **CPG/GS PR NPL LLC** ("CPG/GS"), as purchaser and successor in interest of certain assets of First Bank Puerto Rico[1] ("FBPR") including, among others, credit facilities pursuant to the loans of over $127 Million (the "Loans") made by FBPR to debtor Swiss Chalet Inc. ("Debtor"), by and through its undersigned counsel, and respectfully submits this Request for Entry of Order Prohibiting the Use of CPG/GS' Cash Collateral.

**Preliminary Statement**

For the reasons stated below, CPG/GS requests that this Honorable Court prohibit the Debtor's use of its cash collateral ("Cash Collateral"). Debtor currently generates cash from rents generated by real estate. CPG/GS's pre-petition lien on said rents extends to both pre-petition and post-petition rents pursuant to 11 USC §552(b)(2). Cash may also be generated by the Debtor from the sale of condominium units mortgaged to secure the Debtor's payment

---

[1] On February 16, 2011, CPG/GS acquired the Loans and all rights under the applicable loan documents from FBPR. This acquisition was notified to the Debtors and its guarantors. The Loans and other features of the credit facilities are described in extensive detail in the Verified Complaint in Civil No. KAC 2011-0552 (803), Puerto Rico Court of First Instance, San Juan Section, filed May 26, 2011 and currently stayed. Copy of said Verified Complaint is filed as Exhibit I hereto.

obligations to CPG/GS and, potentially, other sources, all of which cash serves as Cash Collateral. Counsel for the parties have discussed the possibility of entering into a cash collateral stipulation, yet no such agreement exists. Notwithstanding the foregoing, the Debtor has admitted to have used CPG/GS's cash collateral without an agreement to do so. This has left CPG/GS without adequate protection, which it has demanded to no avail, and continues to demand now. CPG/GS should not be forced to bear the risk of erosion of its Cash Collateral, the burden of the continued diminution in the value of its collateral generally, without Debtor providing adequate protection.

## I. Background

1. Generally, the Loans were provided for the development, construction, and operation of three distinct real estate projects and a land loan. The first, commonly referred to as the DoubleTree Hotel, is a hotel located in Condado, Puerto Rico. The second, commonly referred to as Gallery Plaza, is a mixed residential and commercial real estate complex, also located at Condado Puerto Rico. The third, commonly referred to as Atlantis, is a residential real estate complex located in the vicinity of Old San Juan, Puerto Rico. The fourth is a loan for the acquisition of certain land lots in Condado and San Juan, Puerto Rico

2. The Loans and other features of the credit facilities are described in extensive detail in the Verified Complaint in Civil No. KAC 2011-0552 (803), Puerto Rico Court of First Instance, San Juan Section, filed May 26, 2011, true copy of which is attached as Exhibit I hereto and incorporated by reference as if fully recited herein.

3. The Loans are secured by (among other things) virtually all of the Debtor's assets, as more particularly detailed in the Verified Complaint, and among which CPG/GS emphasizes the liens described in the following paragraphs.

4. All of the maturity dates for the Loans (except one of the obligations under the DoubleTree Credit Agreement, as defined in the Verified Complaint) expired approximately one year before the date of filing the Debtor's bankruptcy petition ("Petition Date") and there has been no dispute that the Debtors defaulted on repaying at least $127 million per the terms of the Loans. There is also no dispute that CPG/GS has a first priority perfected lien in the Collateral (described and defined in the Verified Complaint).

5. Prior to the Petition Date FBPR entered into various loan and security agreements with Debtor and others, as detailed in ¶¶ 13-90 of the Verified Complaint (the "Loan Agreements") whereby FPBR made certain loans and provided certain financial accommodations to Debtor.

6. To secure the Debtor's obligations under the Loan Agreements, the Debtor granted to FBPR, through the Loan Agreements, among other Collateral, a May 8, 2007, Amended Collateral Assignment of Lease Agreements and Rents, as amended, whereby Debtor granted, transferred, and assigned, irrevocably to FBPR each and all of the lease contracts described therein or thereafter existing, with each of the tenants, which includes all of the rights derived from the leases, but none of the obligations under the leases, authenticated under affidavit number 16,553 of Notary Public Michel Rachid Piñeiro. See Verified Complaint ¶53, and its **Exhibit 13B**.

7. On July 31, 2000, FBPR and Debtor executed a Security Agreement (the "Personal Property Security Agreement"), authenticated under affidavit number 13,028 of Notary Public Michel Rachid Piñeiro, whereby Debtor pledged and granted to FBPR, as collateral to secure all of the obligations under, among others, the Loan Agreements, a continuing first priority lien upon all:

> Personal property including furniture and fixtures, equipment, accounts receivables, inventory, cash and intangible assets belonging to Swiss Chalet, Inc., including but without limitation, all fixtures, equipments, furniture and any other chattels installed or located or that may in the future be installed or located, at the Hotel Pierre at 105 de Diego Avenue, Santurce, Puerto Rico.

Verified Complaint ¶30. A copy of the Personal Property Security Agreement is attached as **Exhibit 4** to the Verified complaint. Further, various additional filings were made also at the Puerto Rico Commercial Transactions Registry, including but not limited to those on July 29, 2004 (Exhibit II hereto) and March 17, 2006 (Exhibit III hereto) which explicitly included proceeds of the various pledges to FBPR.

8. Moreover, various deeds of mortgage also provided FBPR the right, upon default, to "receive all earnings, income, rents, issues, and proceeds accruing with respect thereto or any part thereof". See, e.g., paragraph SEVENTH (b), Deed of Mortgage No. 105 dated December 19, 2007, before Notary Michel Rachid Piñeiro, recorded at Folio 59, Volume 1199 of Santurce North, Farm No. 6140, 10th Inscription[2].

9. Debtor incurred in multiple pre-petition violations of the Loan Agreements, including but not limited to failure to repay the principal amounts[3] upon maturity.

10. On May 27, 2011, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition") and as of that date has been managing its affairs and operating its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108. See, Dkt. No. 1.

11. As of May 26, 2011, the outstanding principal balance under the Loan Agreements was not less than $120,262.455.65, plus $7,604,261.30 in accrued and unpaid

---

[2] See title study as of May 27, 2011, attached as Exhibit IV.

[3] Except for the loan no. 900155, principal $14,747,824.97 principal and $193,442.24 interest accrued to May 26, 2011. See Verified Complaint ¶94.

interest, for a total outstanding balance of principal and interest aggregating not less than $127,866,716.95. Verified Complaint ¶94.

12. Immediately upon the filing of the Petition, CPG/GS asked the Debtor to provide a budget of its expected cash needs and use, which the Debtor provided for the first time this evening.

13. Since the Petition Date, the Debtor has not deposited any payments on accounts receivables in any segregated accounts at CPG/GS.

14. On the Petition Date, CPG/GS explicitly informed Debtor, through its counsel, to "please note that absent an executed Cash Collateral Stipulation, CPG/GS PR NPL LLC does not consent to the use of its cash collateral by the Debtor. We stand ready to move quickly on this issue." No agreement has been reached to this date.

17. This evening, the undersigned received a proposed budget from the Debtor's counsel, and is currently evaluating the same.

18. While CPG/GS intends to review such budget, it is forced to file this motion as the Debtor has conceded that it has been using (and apparently will continue to use) the Cash Collateral without CPG/GS' consent.

23. Thus, an immediate order by this Honorable Court is necessary to prevent the unauthorized use of Cash Collateral, and enforce Debtor's obligations under Section 363(c)(4) and other authorities.

## Relief Requested and Basis Therein

24. For the reasons stated below, CPG/GS requests that the Court prohibit any use of the Cash Collateral.

**I.  The Court Should Prohibit Any Further Use of Cash Collateral**

    **A.  The Extent of CPG/GS's Cash Collateral**

25. The Cash Collateral constitutes "cash collateral" as defined in 11 U.S.C. § 363(a) of the Bankruptcy Code, which defines "cash collateral" as:

> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels , or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

26. As noted above, CPG/GS has a first priority security interest in the Cash Collateral. The post-petition effect of CPG/GS' security interest is governed by Section 552(b)(2) of the Bankruptcy Code, which states in pertinent part:

> (2) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, and notwithstanding section 546(b) of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to amounts paid as rents of such property or the fees, charges, accounts, or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties, then such security interest extends to such rents and such fees, charges, accounts, or other payments acquired by the estate after the commencement of the case to the extent provided in such security agreement, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b)(2).

27. Thus, CPG/GS has a valid post-petition security interest in all of the rents generated by the Debtor, pursuant to 11 USC §552(b)(2).

28. There is no dispute that CPG/GS complied with all requirements of Puerto Rico law relating to perfection of its security interests in rents and other collateral. Further, as noted above, the Loan Agreement provides CPG/GS with a first priority security interest in substantially all of the Debtor's tangible and intangible property, and rents. Accordingly,

CPG/GS clearly has a post-petition security interest in the Cash Collateral, as they are either rents from the leases and other use of the Debtor's property liened to CPG/GS.

**B.     The Court Should Prohibit the Use of Any Cash Collateral.**

29.     Generally, a debtor in possession, after notice and a hearing, may use, sell or lease **property of the estate**. 11 U.S.C. § 363(b).  However, pursuant to section 363 of the Bankruptcy Code, a debtor-in-possession may not use, sell, or lease cash collateral unless each entity that has an interest in such cash collateral consents, or the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of that section. 11 U.S.C. § 363(c)(2).

30.     CPG/GS has not consented and does not consent to the Debtor's use of its Cash Collateral.  Through the May 27, 2011, communication, CPG/GS expressly indicated to the Debtor that it did not consent to the use of its Cash Collateral and that, accordingly, the Debtor was not authorized to use the same.

31.     For the reasons described below, the Court should prohibit the Debtor's use of the Cash Collateral, as the Debtor has not (and cannot) provided CPG/GS with adequate protection for such use.

**C.     The Debtor Should Not Be Allowed to Use the Post-Petition Cash Collateral.**

32.     Pursuant to section 363(e), any authorized use of the Cash Collateral must be conditioned upon the Debtor's provision to CPG/GS of adequate protection for its interest in the Cash Collateral.

33.     Moreover, the Court should note that Debtor at this time has yet to demonstrate a viable exit or reorganization strategy in the light of difficult market conditions currently existing.

34. It is evident that the Cash Collateral will diminish, producing substantial diminution of CPG/GS secured position, and no adequate protection has been offered to offset the diminution in said value. Under these set of factors, the Court should not require CPG/GS to essentially "finance" the Debtor's continuing uncertainty, by allowing the use of CPG/GS' Cash Collateral while CPG/GS security position continues to diminish.

35. CPG/GS therefore requests that the Debtor be ordered immediately to cease any use of Cash Collateral and to turn over all future Cash Collateral, without prejudice to future agreements with CPG/GS for reasonable use of Cash Collateral under CPG/GS' control.

## II. CPG/GS is Entitled to Adequate Protection of its Cash Collateral and Debtor is Unable to Provide the Same.

36. As described above, CPG/GS requests that the Court prohibit any use of the Cash Collateral and, in addition to such prohibition, that the Court grant CPG/GS adequate protection on an emergency basis by:

    (a) requiring an accounting of all Cash Collateral received by or for the benefit of the Debtor since the Petition Date;

    (b) requiring that any Cash Collateral of CPG/GS that is in the possession, custody or control of the Debtor or any of the Insiders of the Debtor (as such term is defined in 11 U.S.C. § 101) be turned over to CPG/GS, whether now existing or hereafter created;

    (c) prohibiting the Debtor from using any Cash Collateral of CPG/GS unless otherwise ordered by this Court;

    (d) permitting CPG/GS immediate access to the books and records of the Debtor, including all electronic records on any company computers, to make electronic copies, photocopies or abstracts of the business records of the Debtor.

37. A party with an interest in cash collateral is entitled to adequate protection of that interest pursuant to section 363(e) of the Bankruptcy Code. Section 363(e) states that

"the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Section 361 provides examples of adequate protection including: (1) periodic cash payments; (2) additional or replacement liens; and (3) such other relief as will provide the "indubitable equivalent" of the interest. 11 U.S.C. § 361. See also In re Stein, 19 B.R. 458 (Bankr. ED. Pa. 1982) (a court's authority to grant use of cash collateral carries with it a concomitant responsibility to insure that the value of the creditor's security is not impaired and the court may do this by using the non-exclusive terms set forth in 11 U.S.C. § 361).

38. As described above, CPG/GS already has a post-petition security interest in the Debtor's post-petition rents pursuant to 11 USC §552(b)(2).

39. In view of the above, CPG/GS submits that the continued use of cash collateral will serve to increase the deficiency that CPG/GS will bear. It is, therefore, self evident that CPG/GS is not adequately protected from the continued diminution in the value of its collateral.

## Conclusion

40. The Debtor has no right to use the Cash Collateral, and all such Cash Collateral should be forthwith turned over to CPG/GS. As previously stated, the Cash Collateral is property in which CPG/GS has a security interest. The circumstances described above, including Debtor's continued use of Cash Collateral, absent an agreement for the budgeted use of cash, and delay in accounting for its short-term needs and use of cash, further underscore CPG/GS' need for an immediate order prohibiting Debtor's use of any Cash Collateral until CPG/GS and the Debtor shows such budget and accounting to CPG/GS' satisfaction.

WHEREFORE, CPG/GS respectfully requests entry of an order upon emergency hearing:

(a) prohibiting the Debtor from using any cash collateral of CPG/GS unless otherwise ordered by this Court;

(b) requiring that any cash collateral of CPG/GS that is in the possession, custody or control of the Debtor or any of the Insiders of the Debtor (as such term is defined in 11 U.S.C. § 101) be turned over to CPG/GS, whether now existing or hereafter created;

(c) requiring an accounting of all Cash Collateral received by or for the benefit of the Debtor since the Petition Date;

(d) permitting CPG/GS immediate access to the books and records of the Debtor, including all electronic records on any company computers, to make electronic copies, photocopies or abstracts of the business records of the Debtor;

(e) granting such other relief that this Court finds necessary and just.

The undersigned do hereby certify that we

(A) have carefully examined the matter and concluded that there is a true need for an emergency hearing;

(B) have not created the emergency through any lack of due diligence;

(C) have made a bona fide effort to resolve the matter without a hearing.

NOTICE TO DEBTOR AND OTHER PARTIES IN INTEREST

Within fourteen (14) days after service as evidenced by the certification or such shorter interval as the court may order hereafter, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the Clerk's office of the U.S. Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the Court, the interest of justice requires otherwise.

We further certify on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

In San Juan, Puerto Rico, this 6th day of June, 2011.

**O'NEILL & BORGES**
*Attorneys for **CPG/GS PR NPL LLC***
American International Plaza
250 Muñoz Rivera Avenue, Suite 800
San Juan, Puerto Rico 00918-1813
Tel:   (787) 764-8181
Fax:   (787) 753-8944


By: */s/ David P. Freedman*
    David P. Freedman
    USDC No. 119510

By:  /s/ Hermann D. Bauer
    Hermann D. Bauer Alvarez
    USDC No. 215205