IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                              :

                                                    :        CASE NO. 11-04414 (ESL)
SWISS CHALET, INC.
                                                    :

          Debtor                                    :        CHAPTER 11

                                                    :

## OPINION AND ORDER

This case is before the court upon a *Motion for Payment of Administrative Expenses* (the "*Administrative Expenses Payment Motion*"; Docket No. 140) filed by creditor McP&G, Inc. d/b/a Terranova Realty Group ("Terranova") seeking an order for the Debtor to pay its post-petition services in the amount of $87,111.43 as an administrative expense pursuant to Sections 365(d)(3) and 503(b)(1)(A) of the Bankruptcy Code. After several failed attempts to settle the controversy, the court ordered the Debtor and Terranova to file a brief on the issue (Docket No. 218). The Debtor filed a brief in support of the denial of said payment (Docket No. 298) and Terranova filed a brief in support of its priority payment (Docket No. 299). For the reasons stated below, Terranova's *Administrative Expenses Payment Motion* is hereby granted in part and denied in part without prejudice.

## Procedural Background

The Debtor filed its Chapter 11 bankruptcy petition with the corresponding schedules on May 27, 2011 (Docket No. 1). Since then, the Debtor has been managing its affairs and operating its business as a debtor-in-possession pursuant to Sections 1107 & 1108 of the Bankruptcy Code. In its Schedule F, the Debtor included Terranova as an unsecured non-priority creditor in the amount of $32,843.09 (Docket No. 1, p. 17). The deadline for non-governmental creditors to file proofs of claims was set for September 28, 2011 (Docket No. 7).

On November 17, 2011, Terranova filed a Proof of Claim (Claim Register No. 23-1) requesting an administrative expense payment in the amount of $78,083.87 for services rendered to the Debtor as a result of four (4) broker and administration agreements for the administration of the Atlantis and Gallery Plaza condominiums (the "Executory Contracts"). According to the aging list attached thereto, the amounts due corresponded to services provided during the months of November, October, September, August, July and other undetermined previous months of 2011 (Claim Register

No. 23-1, p. 3).

Also on November 17, 2011, the Debtor filed a *Motion to Reject Executory Contracts* (Docket No. 116) averring that they were burdensome and onerous to the bankruptcy estate and thus their rejection would be beneficial. The Debtor also argues that the rejection of these Executory Contracts would alleviate its management differences and difficulties with Terranova. On December 5, 2011, Terranova filed its *Verified Opposition to Motion to Reject Executory Contracts* (Docket No. 137) claiming that the applicable standard to consider the rejection or assumption of the Executory Contracts is the "business judgment rule". Terranova alleges that the Debtor failed to present any evidence to demonstrate how the rejection of the Executory Contracts would benefit the bankruptcy estate and that, on the contrary, if the Executory Contracts were rejected, the consequences would be prejudicial. Terranova also contends that the Debtor's request to have the Executory Contracts rejected is a personal vendetta against the McCloskey family, who owns Terranova.

On December 7, 2011, Terranova filed the *Administrative Expenses Payment Motion* (Docket No. 140) alleging that pursuant to the Executory Contracts, the Debtor owes $87,111.43 for post-petition services which constitute an administrative expense pursuant to Sections 365(d)(3) & 503(b)(1)(A) of the Bankruptcy Code. An aging list of the accrued post-petition amounts was attached to the motion as Exhibit E for invoices allegedly past due as of December 31, 2011 (Docket No. 140, p. 35). On December 19, 2011, the Debtor filed an *Answer to [Terranova's] Verified Opposition to Reject Executory Contracts* and to the *Administrative Expenses Payment Motion* (Docket No. 157) asserting the rejection of the Executory Contracts complies with the "business judgment rule" incorporating Ms. Susan Antonietti's reasoning in her statement under penalty of perjury attached thereto. As to Terranova's *Administrative Expenses Payment Motion*, the Debtor contends that Section 365(d)(3) is inapplicable to the Executory Contracts because it expressly provides that the trustee or debtor in possession shall timely perform all the obligations of the debtor, except those specified in Section 365(b)(2), arising from and after the order for relief under any unexpired lease of non-residential real property, until such lease is assumed or rejected, notwithstanding Section 503(b)(1) of the Bankruptcy Code, and that the Executory Contracts are not unexpired leases. The Debtor concludes that when a contract has not been previously assumed, the

rejection, be it prior to or on confirmation of the reorganization plan, constitutes a breach immediately before the date of the filing of the bankruptcy petition.

On December 20, 2011, the court held a hearing where the Debtor and Terranova were granted five (5) days to file a settlement agreement (Docket No. 160).

On December 28, 2011, the Debtor field an *Objection to Proof of Claim 23* (Docket No. 173) arguing that Terranova's Proof of Claim No. 23-1 was filed after the September 28, 2011 deadline (Docket No. 7), that therefore it is time-barred and must be disallowed.

On January 4, 2012, Debtor and Terranova filed a *Settlement Agreement* (Docket No. 176) whereby they rejected the Executory Contracts as of that date but agreed to have the *Administrative Expenses Payment Motion* in abeyance order to attempt an amicable solution and, if no agreement was reached, the parties would submit the issue to the court for final determination. They also agreed that Terranova would continue to provide the services relative to the then rejected Executory Contracts on a month to month basis until the confirmation of the Debtor's plan of reorganization, at which time they would be terminated. In addition, the parties stipulated that the "Debtor [would] not incur in any administrative expenses other than those arising from the services actually rendered by Terranova" (Docket No. 176, p. 3, ¶ 10(b)). Terranova's compensation was settled to be the one set forth in the Executory Contracts, as amended. No interested party objected the *Settlement Agreement* and on January 9, 2012, the court approved it (Docket No. 182).

On January 26, 2012, Terranova filed a *Reply to Objection to Claim #23 and Request for Order* (Docket No. 209) acknowledging that its Claim Register No. 23 was time-barred and "should be disallowed as filed, as it was supposed to be filed as a motion requesting administrative expenses"[1], but arguing in turn that the *Administrative Expenses Payment Motion* was subsequently filed and is resolution remains *sub judice* inasmuch it was agreed to be held in abeyance. Terranova requested 14 days to submit its position as to the *Administrative Expenses Payment Motion*.

On January 30, 2012, a confirmation hearing was held where the Debtor and Terranova were ordered to brief the court on the *Administrative Expenses Payment Motion* within 14 days (Docket

---

[1] Docket No. 209, p. 1, ¶ 3.

No. 218).  On February 15, 2012, Terranova, with the Debtor's consent, requested an extension of time for both to file their respective briefs, which the court granted on February 16, 2012 (Docket Nos. 243 & 245).

On February 28, 2012, the Debtor filed a *Motion for Resolution of Pending Controversy Between Debtor and Mc P&G, Inc., in Compliance with Order* ("*Debtor's Brief*", Docket No. 298) regarding Terranova's *Administrative Expenses Payment Motion* (Docket No. 140).  In it, the Debtor avers that contrary to Terranova's contention, Section 365(d)(3) of the Bankruptcy Code is only applicable to unexpired leases, not to the Executory Contracts in controversy.  The Debtor also concludes that because Section 365(g) sets the time of the breach of contract pre-petition, it does not allow the claim as an expense of administration of the estate and that contract rejection damages, if any, are measured as of the day immediately before the date of the filing of the petition, not as of the rejection date.  The Debtor argues that when a contract has not been previously assumed, its rejection, be it prior to or on confirmation of a plan, constitutes a breach immediately before the date of the filing of the bankruptcy petition and the other party, in this case Terranova, becomes a general unsecured creditor not covered by Section 365(d)(3).

On February 28, 2012, Terranova filed a *Memorandum of Law in Support of Motion for Payment of Administrative Expenses* ("*Terranova's Brief*", Docket No. 299) where it proposes that all its post-petition services rendered to the Debtor constitute administrative expenses.  As of that date, Terranova claims that Debtor owes a total amount of $107,515.42.

Applicable Law & Discussion

*(A)      Rejection of an Executory Contract*

Section 365 of the Bankruptcy Code allows a trustee or debtor in possession to assume or reject executory contracts.  Although not defined in the Bankruptcy Code, the "rejection" of an executory contract is a formal declaration that it will not be assumed.  See William D. Warren & Daniel J. Bussel, Bankruptcy, Foundation Press, 8th ed. 2009, p. 230.  A rejected executory contract "constitutes a breach of such contract ... if such contract has not been assumed ... immediately before the date of the filing of the petition."  11 U.S.C. § 365(g)(1).  Section 502(g)(1) provides that the creditor of a rejected executory contract may be entitled to an unsecured claim that must be allowed

4

or disallowed as if the claim had arisen before the filing of the bankruptcy petition.  11 U.S.C. § 502(g)(1).

The United States Court of Appeals for the First Circuit ("First Circuit") has ruled that court approval is a condition precedent to the effectiveness of rejection of a contract and therefore, the date of the court approval, not the motion's filing date, controls the rejection.  Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machs. Corp.), 67 F.3d 1021, 1025 (1st Cir. 1995).  Also see Tenucp Prop. LLC v. Riley (In re GCP CT Sch. Acquisition, LLC), 429 B.R. 817, 825 (B.A.P. 1st Cir. 2010).

In the instant case, the Debtor and Terranova agreed that the effective date of rejection of the contract was to be on the date the *Settlement Agreement* was entered, to wit, on January 4, 2012 (Docket No. 176, p. 3, ¶ 10(a)) and the court approved it as filed on January 9, 2012 (Docket No. 182).  Therefore, the court must now analyze whether or not the expenses were administrative from the filing of the petition (May 27, 2012) until January 4, 2012 and whether or not they were administrative from that day onward.

*(B)      Administrative Expenses*

The paramount objective of a Chapter 11 reorganization is to rehabilitate and preserve the value of the financially distressed business.  Mason v. Official Comm. of Unsecured Creditors (In re FBI Distrib. Corp.), 330 F.3d 36, 41 (1st Cir. 2003) citing NLBR v. Bildisco, 465 U.S. 513, 528 (1983), and Otte v. United States, 419 U.S. 43, 53 (1974).  To further that objective, Section 503 of the Bankruptcy Code allows as administrative expenses the actual and necessary costs and expenses to preserve and/or benefit the bankruptcy estate.  "The underlying reasoning is that an expense incurred in exchange for something that is not beneficial to the estate cannot be considered as an expense necessary for preserving the estate."  Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 503.06 (16th ed. 2012) at p. 503-29.

Although an "administrative expense" is not defined in the Bankruptcy Code, Section 503(b) contains a non-exhaustive list of the types of expenses that are considered administrative.  In its pertinent part, Section 503 provides as follows:

(a) An entity may timely file a request for payment of an administrative expense, or may

tardily file such request if permitted by the court for cause.

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including–

(1)(A) the actual, necessary costs and expenses of preserving the estate including–

(i) wages, salaries, and commissions for services rendered after the commencement of the case; 11 U.S.C. § 503.

A principal aim of Section 503 is to encourage parties to render post-petition services to debtors by ensuring that payment will be made on a priority basis in the post-petition period. See In re FBI Distrib. Corp., 330 F.3d at 41, citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 186, 186-87 (1977); Doctor's Hospital v. Vilar (In re Doctor's Hospital), 1995 U.S. App. LEXIS 1576 at *3, 1995 WL 30903 at *1 (*Per Curiam*, 1st Cir. 1995), citing In re Mammoth Mart, Inc., 536 F.2d 950; Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 503.06[2] (16th ed. 2012) at p. 503-26 ("allowing administrative expense priority under Section 503(b)(1) is important to provide an incentive for creditors to continue doing business with a debtor and an incentive for others to engage in business transactions with the debtor.") Section 503 derives its importance from Section 507, which sets forth the categories of expenses and claims that are entitled to priority treatment in the distribution of a debtor's estate. Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 503.01 (16th ed. 2012) at p. 503-8; 11 U.S.C. § 507. Thus, administrative expenses are entitled to priority in payment pursuant to Section 507(a)(2).

In Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.), 536 F.2d 950, 954 (1st Cir. 1976), the First Circuit established a two-prong test to determine whether or not a claim qualifies as an administrative expense: (1) the right to payment must arise from a post-petition transaction with the debtor estate, rather than from a pre-petition transaction with the debtor, and (2) the consideration supporting the right to payment must be "beneficial to the estate" of the debtor. Id. at 954. This two-prong test was subsequently upheld by the First Circuit in In re FBI Distrib. Corp., 330 F.3d at 42: "In general, for a claim to qualify as an administrative expense under subsection 503(b)(1): (1) it must have arisen from a transaction with the trustee or debtor in possession, rather than from a pre-petition transaction with the debtor, and (2) the consideration supporting the claim must have benefitted the estate in some demonstrable way".

Contrary to a proof of claim, which has *prima facie* validity and is deemed allowed if timely filed absent of objection, Section 503(a) of the Bankruptcy Code does not set a time for filing a request for allowance or payment of an administrative expense and thus, there is no deadline for filing such request. Texas Comptroller of Public Accounts v. Megafoods Stores (In re Megafoods Stores), 163 F.3d 1063, 1071 (9th Cir. 1998) ("There is no bar date to filing requests for the allowance of administrative expenses under Section 503.") Also see Nancy C. Dreher and Joan N. Feeny, Bankruptcy Law Manual, Volume 1 § 6:33 (2011-12), p. 1056.

The Debtor does not dispute that the services for which Terranova claims administrative priority were rendered post-petition nor that the bankruptcy estate benefitted from said services. Neither does it controvert the amounts claimed by Terranova. It argues instead that because the Executory Contracts had not been previously assumed, their rejection constitutes a prepetition breach of contract pursuant to 11 U.S.C. § 365(g)(1), which trumps the administrative expense provision in 11 U.S.C. § 503. *Debtor's Brief*, Docket No. 298, ¶¶ 24-26, p. 8.

From the date of the filing of the bankruptcy petition until the *Order* approving the *Settlement Agreement*, there is no dispute that Terranova provided the services of the Executory Contracts, and it is undisputed that said services benefitted the bankruptcy estate. The Debtor has not controverted either assertion. Thus, it amply fits the two-prong administrative expense test established in In re FBI Distrib. Corp., 330 F.3d at 42, and In re Mammoth Mart, Inc., 536 F.2d at 954: the services in question were rendered post-petition and they benefitted the estate.

As to the services provided by Terranova after the *Settlement Agreement* was approved by the court, in said *Agreement* both parties stipulated that the Executory Contracts were deemed rejected, not pre-petition as the Debtor contends, but as of the date of the *Settlement Agreement* onward. See Docket No. 176, p. 3, ¶ 10(a). Moreover, both parties also agreed that Terranova would thereafter provide the services relative to the then rejected contracts on a "month to month basis until the confirmation of [the] Debtor's Plan of Reorganization, at which time they will be terminated, it being understood that [the] Debtor will not incur in any administrative expenses **other than those arising from the services actually rendered by Terranova** and as set forth" in the Executory Contracts, to which they made express reference. *Settlement Agreement*, Docket No. 176, p. 3, ¶ 10(b)

(emphasis added). In other words, the Debtor acknowledged that the services Terranova provided from the *Settlement Agreement* onwards would be considered administrative expenses.

After determining whether an expense has or not administrative status, the court must then determine the amount allowable as an administrative expense. See Nancy C. Dreher and Joan N. Feeny, Bankruptcy Law Manual, Volume 1 § 6:33 (2011-12), p. 1055. A creditor seeking an administrative claim has the burden of proving the elements that qualify for that status. Am. Express Bank, FSB v. Askenaizer (In re Plourde), 418 B.R. 495, 507 (B.A.P. 1st Cir. 2009). In this case, the aging list provided by Terranova as Exhibit E to the *Administrative Expenses Payment Motion* (Docket No. 140, p. 35) does not demonstrate the nature of the services provided, the date when they were provided nor its appropriateness. Therefore, an evidentiary hearing may be necessary to determine the amounts allowable as an administrative expense.

Conclusion

For the reasons stated herein, Terranova's *Administrative Expenses Payment Motion* (Docket No. 140) is granted to declare its services an administrative expense but denied without prejudice in regards to the amounts claimed. Terranova shall file within fourteen (14) days a detailed statement of the services provided, the dates the same were performed and the amounts.

SO ORDERED.

In San Juan, Puerto Rico, this 11th day of July 2012.

Enrique S. Lamoutte
United States Bankruptcy Judge