IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CASE NO. 11-04414 (ESL) |
| SWISS CHALET, INC. | : | |
| | : | |
| Debtor | : | CHAPTER 11 |
| _____ | : | |

OPINION AND ORDER

The instant case is before the court upon two *Motions to Compel* (Docket Nos. 362 and 480) filed by creditor CPG/GS NPR, LLC's ("CPG")*,* Swiss Chalet Inc.'s ("Debtor" or "SCI") *Notice of Intent to Oppose Discovery* and *Answer* (Docket Nos. 430 and 482), and subsequent related motions (Docket Nos. 440, 448, 455 and 485). The contested matter stems from CPG's interrogatories, and requests for production of documents and admissions to the Debtor (Docket No. 428) regarding the amount of the carve-out provided in the Debtor's confirmed *Plan of Reorganization* and the Debtor's opposition thereto. The Debtor sustains that CPG's intended discovery is unnecessary because an agreement was reached with CPG as to the carve-out amount. For the reasons stated below, CPG's discovery is partially allowed.

Procedural Background

The court hereby incorporates the procedural background set forth in the *Opinions and Orders* entered on July 11, 2012 (Docket No. 401) and November 27, 2012 (Docket No. 478).

The Debtor filed its Chapter 11 *Plan of Reorganization* (the "*Plan of Reorganization*", Docket No. 136), which was confirmed on February 3, 2012 (the "*Confirmation Order*", Docket No. 226). The *Plan* required various transactions to take place on the Effective Date, to wit, February 21, 2012 (the "Effective Date", Docket No. 260). Among them were: (a) the payment of the administrative tax claims; and (b) the transmittal of additional cash from CPG/GS to Debtor to complete the $910,637.52 "Carve-Out Cash (SCI)", "to the extent that available Cash in the SCI estate is insufficient to cover the amount of SCI's Carve-Out Accounts". See *Confirmation Order,* Docket No. 226, pp. 10-11, at ¶ 15.

On April 4, 2012, the Debtor filed a *Post Confirmation Monthly Operating Report* for the period beginning February 1, 2012 and February 29, 2012 (the "February 2012 MOR", Docket No. 330), to which it attached its monthly statement of its account at Banco Popular de Puerto Rico.

On April 27, 2012, CPG issued a letter to SCI inquiring about the February 2012 MOR and requesting information of its cash balances at the end of February 2012 and why it had contended to have no available cash at the Effective Date when the February 2012 MOR showed otherwise. CPG also requested evidence as to SCI's payments to CRIM.  See Docket No. 362-3.

On May 24, 2012, CPG filed the first *Motion to Compel* (Docket No. 362) alleging that "[o]n February 21, 2012 (the Effective Date), SCI represented to CPG that it had no available cash", that based on that representation, the Debtor demanded that CPG provided additional cash by wire transfer in the full amount of the Carve-Out Cash, *i.e.* $910,637.52, and that CPG wired such amount to SCI, but that as of February 21, 2012, SCI had immediately available cash in the amount of not less than $541,221.44 as per the later disclosed bank statement by Banco Popular filed with the February 2012 MOR on April 4, 2012 (Docket No. 330).  See Docket No. 362, p. 2, ¶¶ 6, 8 and 9. CPG sustains that had it known SCI's true available cash balance, it would have only wired $369,418.08 to complete the Carve Out Cash required by the *Plan* and *Confirmation Order* and that because SCI led CPG to believe that had no available cash on the Effective Date, SCI must now retuen to CPG its cash collateral existing on the Effective Date not disclosed until April 4, 2012, to wit, $541,221.44.  See Docket No. 362, p. 2-3, ¶¶ 12-13.

On June 5, 2012, the *Motion to Compel* was scheduled for a hearing on September 4, 2012 (Docket No. 428).

On August 9 and 10, 2012, CPG served on SCI a first set of interrogatories and document requests and a first request for admissions, respectively.  See Docket No. 428.  On August 21, 2012, SCI filed a *Notice of Intent to Oppose Discovery* (Docket No. 430) alleging that the amount of carve-out was settled at a meeting held on February 21, 2012 at the law offices of O'Neill & Borges in the amount of $910,637.52 as set forth in the *Plan*, and that "it was agreed by SCI and CPG that no adjustment would be made thereto".  On August 30, 2002, CPG filed a *Response to Debtor's Notice of Intent to Oppose Discovery and Request for an Evidentiary Hearing* (Docket No. 440) claiming that discovery is necessary for the resolution of the Carve-Out Cash issue because contrary to the Debtor's assertions, the same was never "settled" at the February 21, 2012 meeting and therefore is essential to determine Debtor's available cash as of the Effective Date.  CPG attached

a *Declaration [Under Penalty of Perjury] of Matthew Karp* dated August 29, 2012, the chief representative of CPG at the February 21, 2012 meeting at O'Neill & Borges, attesting that SCI had asserted on the Effective Date that it had no available cash and based on that representation, CPG issued the wire transfer in the full amount of the Carve-Out Cash. See Docket No. 440-1, p. 2, ¶¶ 6-7.

On September 4, 2012, the court held a hearing to consider, *inter alia*, CPG's *Motion to Compel*. See Docket Nos. 447 (*Audio File Attachment*) and 451 (*Minute Entry*). The court granted Debtor 10 days to reply to CPG's *Response* (Docket No. 440) and held in abeyance the discovery served by CPG.

On September 12, 2012, the Debtor filed its *Reply to CPG/GS' Response ...* insisting that "it was agreed by CPR's and SCI's representatives that the 'carve out' be fixed in $1,000,000 less the professional fees paid by SCI for a balance of $910,637.32" and that the intended discovery by CPG to that effect is "irrelevant, burdensome, unnecessary and directed to a settled issue" (Docket No. 448, p. 4, ¶¶ 14 and 17). SCI attached an *Unsworn Statement under Penalty of Perjury* subscribed by Pedro Feliciano Benitez, Arnold Benus Silva, Jose Teixidor, Roberto Corretjer Piquer, Alfred Hernandez Martinez, Juan Ortega, Luis R. Carrasquillo Ruiz and Cesar Hernandez Monagas attesting that they had read the *Reply* and that the facts established therein as to the discussions with CPG and the agreement reached in regards to the amount of the carve-out are correctly stated (Docket No. 448, pp. 5-6).

On September 18, 2012, the *Minute Entry* for the September 4, 2012 hearing was entered (Docket No. 451). Item #5 of the *Minute Entry* states that "Debtor shall comply with CPG's discovery requests".

On September 24, 2012, CPG filed a *Response to Debtor's Reply* (Docket 455) alleging that: (a) the Debtor's Unsworn Statement attached to the *Response* (Docket No. 455, pp. 5-6) does not provide competent factual support that a "compromise" was reached in regards to Debtor's available

cash at the Plan's Effective Date; (b) the Debtor may not disregard ¶ 15 of the *Confirmation Order*[1] because the parol evidence rule bars any amendment deleting it; (c) CPG did not enter into a contract with the Debtor; (d) Debtor's alleged "oral agreement" is null and void under Fed. R. Bankr. P. 9019; and (e) the discovery served on the Debtor is required to determine the amount of administrative tax debts that Debtor still has to pay to comply with and consummate the *Plan of Reorganization*.

On December 19, 2012, CPG filed its second *Motion to Compel* (Docket No. 480) alleging: (a) that the *Minute Entry* (Docket No. 451) superseded the court's oral ruling at the September 4, 2012 hearing in regards to holding in abeyance the discovery controversy; (b) that the Debtor has not timely sought a protective order, which constitutes a waiver on objecting the discovery. CPG seeks an order to compel discovery and for the Debtor to pay reasonable expenses, including attorney's fees, under Fed. R. Civ. P. 37, applicable to this proceeding by Fed. Bankr. Rs. 9014 and 7037.

On January 4, 2013, the Debtor filed an *Answer to [the] Motion to Compel* (Docket No. 482) averring the court is yet to rule on the discovery requested by CPG and that in its *Notice of Intent* (Docket No. 430) it advanced that it was its position that the amount of the carve-out was settled at the February 21, 2012 meeting held at the law offices of O'Neill & Borges in the amount of $910,637.52 as set forth in the *Plan of Reorganization*.

On January 14, 2013, CPG filed a *Reply to Debtor's Answer* (Docket No. 485) reiterating its request to obtain the responses to its discovery requests.

A status conference was held on February 4, 2013 (Docket Nos. 496 and 500) where the parties restated their positions regarding the alleged agreement as to the carve-out and the pending discovery.

---

[1] ¶ 15 of the *Confirmation Order* States that wire transfer funding component of the "Carve-Out Cash" would be provided "to the extent that the available cash in the SCI estate is insufficient to recover the amount of SCI's Carve-Out Cash" (Docket No. 226, pp. 10-12, ¶ 15).

Discussion

*(A)    The Court's Oral Ruling at the September 4, 2012 Hearing vis à vis the Minute Entry*

After reviewing the audio attachment of the September 4, 2012 hearing (Docket No. 447) and its *Minute Entry* (Docket No. 451), the court did not order the Debtor to comply with the discovery requests. The order was for Debtor to reply to Docket No. 440 within 10 days and the matter would be taken under advisement.

*(B)    The Discovery Served by CPG to the Debtor*

Debtor's confirmed *Plan of Reorganization* calls for the payment of the administrative tax claims (Docket No. 226-1, p. 20, ¶ 2.3). Its Effective Date was set for February 21, 2012 (Docket No. 260). The *Plan of Reorganization* also establishes the "Carve-out Cash (SCI)" in the amount of $1,000,000.00 minus the amounts paid for professional fees, as agreed in the *Stipulation on the Use of Cash Collateral and Adequate Protection* (Docket No. 24), exclusive of any pre-petition retainers. See Docket No. 226-1, p. 8 (definition of Carve-Out Cash (SCI)). Those professional fees amounted to $89,362.48, and thus the Carve-Out Cash (SCI) was determined as $910,637.52 (Docket Nos. 362, p. 1, ¶ 4, and 362-1, p. 1). Thus, under the *Plan of Reorganization*, CPG was to fund the approved carve-out account in the amount of $910,637.52 "to the extent that available Cash in the SCI estate is insufficient to cover the amount of SCI's Carve-Out Cash". Docket No. 226, pp. 10-11, ¶ 15.

CPG contends that on the Effective Date, SCI made representations that it had no available cash and that as a result, it provided a wire-transfer in the full amount of $910,637.52. See CPG's *Motion to Compel,* Docket No. 362, p. 2, ¶¶ 6, 8 and 9. Notwithstanding, CPG claims that in spite of the Debtor's representations on its lack of cash, SCI actually had available cash at the Effective Date, as it subsequently discovered through the February 2012 Monthly Operating Report filed on April 4, 2012 (Docket No. 330). CPG therefore seeks reimbursement of $541,221.44, that is, the excess of what CPG was required to provide. It also seeks discovery on the latter and on the Debtor's CRIM payments, as it was required to pay under the *Plan of Reorganization* in light of information provided by the Debtor in several post-confirmation motions (*i.e.* at Docket Nos. 335, p. 6, SCI reported a $301,951.82 payment to CRIM on March 6, 2012; on the other hand, April 25,

5

2012 SCI's March 2012 MOR (Docket No. 341) reports instead a payment to CRIM of $295,878.52 by check no. 1787 dated March 13, 2012).

SCI does not really dispute the foregoing, but rather sustains that the carve out was settled at a meeting held on February 21, 2012, at the law offices of O'Neill & Borges in the amount of $910,637.52 as set forth in the Plan and that it was agreed by SCI and CPG/GS that no adjustment would be made thereto. See Docket Nos. 430 and 482. Therefore, SCI concludes that discovery is unnecessary.

Because the docket in the instant case contains two irreconcilable statements under penalty of perjury in regards to the alleged agreement of the carve-out (Docket Nos. 440-1, pp.1-4, and 448, pp. 5-6), the issue in this contested matter must be tried through an evidentiary hearing. "If a dispute in a bankruptcy proceeding is not an adversary proceeding, it is a contested matter." Robert E. Ginsberg & Robert D. Martin, Ginsberg & Martin on Bankruptcy, § 1.06[B] (5th ed. 2008). Contested matters are governed by Fed. R. Bankr. P. 9014. Fed. R. Bankr. P. 9014(c) expressly makes Fed. R. Bankr. P. 7026 (General Provisions Governing Discovery) applicable to contested matters, which incorporates Fed. R. Civ. P. 26. "The scope of discovery available in a contested matter is virtually identical to the scope of discovery in any federal civil proceeding." Robert E. Ginsberg & Robert D. Martin, Ginsberg & Martin on Bankruptcy, § 1.06[C] (5th ed. 2008). The scope afforded by Fed. R. Civ. P. 26(b)(1) allows "discovery regarding any nonprivileded matter that is relevant to any party's claim or defense".

Thus, CPG is allowed to conduct discovery on the alleged agreement on the carve-out and on the unsworn statements filed with the court. Discovery on all other matters is held in abeyance until the dispute on whether or not there was an carve-out agreement was reached is ultimately resolved. The court cannot make a ruling regarding CPG's interrogatories and request for production of documents and admissions since the same have not been filed and, thus, they cannot be examined under the scope of Fed. R. Civ. P. 26.

## Conclusion

For the reasons above, the CPG's *Motion to Compel* (Docket No. 480) is partially granted to allow discovery on the alleged agreement on the carve-out and on the unsworn statements filed

6

with the court. The parties shall conclude discovery within sixty (60) days from the entry of this order. A pretrial hearing on the contested matter is scheduled for May 28, 2013 at 2:00 p.m.

SO ORDERED.

In San Juan, Puerto Rico, this 11th day of March, 2013.

Enrique S. Lamoutte
United States Bankruptcy Judge